ANN FOLLACCHIO *v.* LUCILLE FOLLACCHIO ET AL.
(AC 31688)

Robinson, Bear and Mihalakos, Js.

Argued June 4—officially released October 12, 2010

*Veronica Halpine*, with whom, on the brief, was *Ann Follacchio*, pro se, for the appellant (plaintiff).

*Edward F. Czepiga*, with whom was *Paul T. Czepiga*, for the appellee (defendant Paul T. Czepiga).

*Opinion*

BEAR, J. This appeal requires us to determine whether a party in a probate proceeding who made unsuccessful challenges pursuant to General Statutes §§ 45a-175 and 45a-656 to a conservator's decision to maintain his ward in a certain health care facility and to the Probate Court's award of fees and expenses pursuant to the conservator's final accounting is entitled to a trial de novo on appeal to the Superior Court. The plaintiff, Ann Follacchio, appeals from the judgment rendered by the Superior Court that affirmed the judgment of the Probate Court in favor of the defendants, Lucille Follacchio (the ward),[1] Mary Wright, Thomas

---

[1] Following the death of the ward during the pendency of this appeal, the plaintiff did not substitute the executor or administrator of her estate as a defendant. Nevertheless, we conclude that the action was not abated upon the ward's death because it continued as to the remaining codefendants; accordingly, a substitution was not necessary. See *Rocque* v. *DeMilo & Co.*, 85 Conn. App. 512, 521–22, 857 A.2d 976 (2004) (applying General Statutes § 52-600 in concluding that upon death of defendant, action not abated but continued as to remaining codefendants).

Follacchio, Madeline Follacchio, Keith Mangene, Paul T. Czepiga and the Honorable Norman E. Rogers, Jr., acting judge of the Probate Court for the district of Berlin. On appeal, the plaintiff claims that the Superior Court improperly (1) refused to hear de novo her appeal from the judgment of the Probate Court, (2) conducted an "on the record" review of the Probate Court's judgment without the benefit of the official record, which was not transmitted by the Probate Court, (3) used the reasonable compensation analysis articulated in *Hayward* v. *Plant*, 98 Conn. 374, 385, 119 A. 341 (1923), to determine the compensation due to Czepiga, the former conservator, and (4) upheld the Probate Court's award of fees and expenses to Czepiga, which were not documented properly. We agree with the plaintiff's first claim on appeal.[2] Accordingly, we reverse the judgment of the Superior Court and remand the case for a trial de novo.

The record reveals the following relevant facts, as found by the Probate Court, and procedural history. The ward was conserved voluntarily on July 16, 2002. The conservatorship subsequently was converted to an involuntary conservatorship. The ward's family, including her daughters Wright, Madeline Follacchio, Donna Mangene and the plaintiff, and her grandson, Keith Mangene, have been closely involved in her care. There were many disagreements about the ward's needs and finances, management of her household and caregiving methods. These disagreements led to conflicts that resulted in numerous Probate Court hearings generally involving the plaintiff on one side of an issue and the rest of the ward's family on the other side.

The plaintiff served as the ward's initial conservator, but, subsequently, because of the family conflicts, Judge

---

[2] Because our conclusion as to the first issue is dispositive, we do not address the plaintiff's additional claims.

Rogers appointed Huguet Pameijer as conservator in an effort to resolve the disputes. The conflicts continued, however, and, on May 4, 2004, the court replaced Pameijer as conservator with Czepiga. Although he did not always have the support of the entire family, Czepiga generally brought stability to the situation.

Czepiga eventually resigned as conservator as a result of a disagreement between the plaintiff and the rest of the family regarding the transfer of the ward from Hughes Health and Rehabilitation, Inc., the facility in which she was residing in West Hartford, to Jerome Home, a facility in New Britain. A hearing was held before the Probate Court to consider Czepiga's final accounting and also to consider the plaintiff's request to transfer the ward to Jerome Home. On September 4, 2008, Judge Rogers approved Czepiga's final accounting after reducing the requested fiduciary fees, and he denied the plaintiff's request to transfer the ward to Jerome Home.

The plaintiff appealed the decision to the Superior Court claiming that the ward was entitled to be placed in the least restrictive setting pursuant to General Statutes §§ 45a-644, 45a-650 and 45a-656, that Jerome Home was a less restrictive setting and that the Probate Court improperly failed to apply certain published rates to determine Czepiga's fees. She requested that the trial court (1) grant a trial de novo pursuant to General Statutes § 45a-186, (2) reverse the judgment of the Probate Court, (3) order the immediate transfer of the ward to Jerome Home, (4) reduce Czepiga's fiduciary fees and (5) deny approval of some of the expenses paid or incurred by Czepiga.[3]

[3] The ward died on December 29, 2008, during the pendency of the plaintiff's appeal to the trial court. The trial court, thereafter, deemed moot the portion of the appeal challenging the approval of the decision not to transfer her to Jerome Home.

On December 23, 2008, Czepiga filed an objection to the plaintiff's prayer for relief for a trial de novo. On February 26, 2009, the court sustained Czepiga's objection, concluding that General Statutes § 45a-186a[4] governed the appeal, and it declined to hear the case de novo. Specifically, the court held that it "disagree[d] with the plaintiff's argument that [General Statutes §§ 45a-186a and 45a-186b] do not apply. There is no dispute that the proceedings before the Probate Court were recorded and can be transcribed for this court's review. Accordingly . . . § 45a-186a (c) applies, so that '[t]he appeal shall be confined to the record.' "[5] Pursuant to § 45a-186a (a), the court then ordered the plaintiff

[4] General Statutes § 45a-186a provides: "(a) In an appeal from an order, denial or decree of a court of probate made after a hearing that is on the record, not later than thirty days after service is made of an appeal under section 45a-186, or within such further time as may be allowed by the Superior Court, the Court of Probate shall transcribe any portion of the recording of the proceedings that has not been transcribed. The expense for such transcript shall be charged against the person who filed the appeal, except that if the person who filed the appeal is unable to pay such expense and files an affidavit with the court demonstrating the inability to pay, the expense of the transcript shall be paid by the Probate Court Administrator and paid from the Probate Court Administration Fund.

"(b) The Court of Probate shall transmit to the Superior Court the original or a certified copy of the entire record of the proceeding from which the appeal was taken. The record shall include, but not be limited to, the findings of fact and conclusions of law, separately stated, of the Court of Probate.

"(c) An appeal from an order, denial or decree made after a hearing on the record shall be heard by the Superior Court without a jury, and may be referred to a state referee appointed under section 51-50l. The appeal shall be confined to the record. If alleged irregularities in procedure before the court of probate are not shown in the record or if facts necessary to establish such alleged irregularities in procedure are not shown in the record, proof limited to such alleged irregularities may be taken in the Superior Court. The Superior Court, on request of any party, shall hear oral argument and receive written briefs."

[5] Despite the court's holding, it does not appear that the Probate Court transmitted the official record, i.e., the documentary evidence that was before it, in compliance with § 45a-186a (b). Nor does it appear that the Superior Court requested the official record when it was not forthcoming from the Probate Court. Despite the lack of any portion of the official record, other than a transcript, the court rendered a decision on the appeal.

to pay the expense for a transcript of the tape-recorded Probate Court hearing, which was to be provided to the trial court. On October 29, 2009, the court issued its memorandum of decision concluding that the plaintiff had failed to demonstrate that the Probate Court had committed any error, and it denied the plaintiff's appeal. This appeal followed.

The plaintiff claims that the Superior Court improperly limited her appeal to an on the record review instead of a trial de novo. Specifically, she contends that she was entitled to a trial de novo because §§ 45a-175 and 45a-656 are not set forth in § 45a-186 as a basis to restrict the court to an "on the record" review and the requirements of General Statutes §§ 51-72 and 51-73 were not satisfied to require an "on the record" review. We agree.

The application of a statute to a particular set of facts is a question of law, over which we exercise plenary review. *Maturo* v. *Maturo*, 296 Conn. 80, 88, 995 A.2d 1 (2010). Section 45a-186 (a) provides in relevant part: "Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may . . . appeal therefrom to the Superior Court. . . . *Appeals from any decision rendered in any case after a recording is made of the proceedings under section 17a-498, 17a-685, 45a-650, 51-72 or 51-73 shall be on the record and shall not be a trial de novo.*"[6] (Emphasis added.)

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually

[6] References to §§ 17a-498, 17a-685 and 45a-650 were added to § 45a-186 when it was amended by Public Acts 2007, No. 07-116, § 2.

does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 708, 975 A.2d 636 (2009).

The language of § 45a-186 is plain and unambiguous. It specifies that if proceedings are initiated pursuant to General Statutes §§ 17a-498, 17a-685 or 45a-650, or if a stenographic record is created in other probate proceedings pursuant to §§ 51-72[7] or 51-73,[8] then an appeal from the Probate Court to the Superior Court must be considered on the record of such probate proceedings.

---

[7] General Statutes § 51-72 provides: "Whenever, in any court of probate, the parties or their attorneys so agree in writing, the judge of the court may call in a competent and disinterested person who is capable to act as a stenographer to act as the official stenographer in the whole or in such portion of the cause or matter as may be agreed upon. The compensation of the stenographer shall be paid by the parties in such proportion as the judge of the court decides, except that the compensation shall not exceed that of the official court reporter of the Superior Court."

[8] General Statutes § 51-73 provides: "Each stenographer called in and acting under the provisions of section 51-72 shall be sworn and shall have the powers and be subject to the duties prescribed by law for the official court reporter of the Superior Court. Evidence taken by any such stenographer shall have the same effect and be evidence to the same extent as evidence taken by the official court reporter of the Superior Court. Appeals from any decision rendered in any case after a record is made under this section and section 51-72, shall be on such record and shall not be a trial de novo."

Thus, we must determine whether the probate proceeding in the present case was initiated pursuant to §§ 17a-498, 17a-685, 45a-650, or, in the alternative, whether the requirements of §§ 51-72 or 51-73 were satisfied.

Section 17a-498 pertains to hearings on involuntary commitment proceedings and the rights of persons who are the subject of those proceedings. Section 17a-685 pertains to applications for involuntary commitment, termination of commitment, recommitment and discharge from commitment. Section 45a-650 concerns standards for hearings on the appointment of conservators in involuntary representation proceedings, the rights of respondents, application of the rules of evidence used in civil actions, the required elements of a hearing including certain required and other permitted evidence, orders for medical information, the permitted locations for a hearing, the appointment of a conservator and possible duties of a conservator.[9] The probate proceeding at issue in the present case was commenced to determine whether the continued placement of the ward at Hughes Health and Rehabilitation, Inc., was the least restrictive setting pursuant to § 45a-656, whether Jerome Home was a more suitable alternative for the ward and to approve Czepiga's final accounting. We conclude that the proceeding before the Probate Court did not implicate any of the statutes set forth in § 45a-186 (a) placing restrictions on de novo trials. Therefore, we next must consider whether the Probate Court hearing satisfied the requirements of §§ 51-72 or 51-73.

The parties do not dispute that the proceedings before the Probate Court were tape-recorded and the recording did not comply with the requirements of §§ 51-72 and 51-73. For §§ 51-72 and 51-73 to apply in

[9] Although the plaintiff cited this provision in her appeal to the Superior Court, it was not applicable to the proceedings in the Probate Court concerning the residence of the ward and the conservator's final accounting.

this case, the parties would have had to agree in writing to the presence of a competent and disinterested person to be selected by the probate judge to act as the official stenographer at the hearing, and to pay for the stenographer's services as determined by the probate judge. The stenographer would have had to be sworn in prior to the hearing. Because the Probate Court hearing did not satisfy the requirements of §§ 51-72 or 51-73, and was initiated pursuant to §§ 45a-175 and 45a-656, and not pursuant to one of the sections enumerated in § 45a-186 (a), we conclude that the plaintiff was entitled to a trial de novo in the Superior Court. See *Andrews* v. *Gorby*, 237 Conn. 12, 16–17, 675 A.2d 449 (1996) (appeal from Probate Court proceedings without record in compliance with § 45a-186 requires trial de novo).

The judgment is reversed and the case is remanded to the Superior Court for a trial de novo.

In this opinion the other judges concurred.