BANK OF NEW YORK, AS TRUSTEE (BS ALT A 2005-9) *v.* SONJA V. BELL ET AL.
(AC 33649)

Alvord, Bear and Sheldon, Js.

Argued December 11, 2012—officially released April 23, 2013

*Geoffrey K. Milne*, with whom, on the brief, were *James T. Shearin* and *Steven J. Stafstrom, Jr.*, for the appellant (plaintiff).

*J. Hanson Guest*, for the appellee (named defendant).

*Johnathan S. Bell*, pro se, the appellee (defendant).

Opinion

BEAR, J. The plaintiff, Bank of New York, as trustee for BS ALT A 2005-9, appeals from the judgment of the trial court holding the plaintiff in contempt for its failure to comply with discovery orders issued in response to the discovery requests filed by the defendants Sonja V. Bell and Johnathan S. Bell.[1] On appeal, the plaintiff claims, inter alia, that the court improperly held it in contempt because the court lacked subject matter jurisdiction and, alternatively, that the court lacked the authority to issue discovery orders requiring the plaintiff to turn over documents that belonged to another entity. We agree with the plaintiff's second claim and, accordingly, reverse the judgment of the trial court.[2]

The following facts set forth the relevant background of this appeal. On December 16, 2010, the trial court held the plaintiff in contempt, specifically finding that the failure of the plaintiff to respond fully to the defendants' interrogatories and requests for production over a period of more than a year constituted a wilful violation of the court's prior orders. The court stated that its orders met the requirements set by our Supreme Court in *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001), of reasonable clarity, a trial court finding based on the record of actual violation and that the sanction imposed was proportional to the violation: "Here, the court's

---

[1] Mortgage Electronic Registration Systems, Inc., also was named as a defendant but is not a party to this appeal. We therefore refer in this opinion to Sonja V. Bell and Johnathan S. Bell collectively as the defendants, and individually by name where appropriate.

[2] Because we determine the substance of the plaintiff's appeal on the basis of its second claim which is dispositive, we deem it unnecessary to address the plaintiff's remaining claims. See *Tanzman* v. *Meurer*, 128 Conn. App. 405, 407 n.2, 16 A.3d 1265, cert. granted on other grounds, 301 Conn. 930, 23 A.3d 724 (2011); *Follacchio* v. *Follacchio*, 124 Conn. App. 371, 373 n.2, 4 A.3d 1251, cert. granted on other grounds, 299 Conn. 914, 10 A.3d 530 (2010).

order was reasonably clear as evidenced by the numerous orders this court rendered against the plaintiff in its seeking to avoid answering the interrogatories and producing the requested production. The plaintiff violated the order by not answering a number of interrogatories and by not producing a list of foreclosure cases relating to the assets transferred by [JP Morgan Chase Bank, N.A. (JP Morgan Chase)] to the Bank of New York, and further, by omitting hundreds of pages in the material the plaintiff did submit. As a consequence, the court finds the plaintiff in contempt and orders it to pay to . . . Johnathan S. Bell a fine of $1000 to compensate him for the time expended analyzing the plaintiff's submissions and discovering the omitted pages."

The plaintiff filed a motion to reargue the pertinent contempt motion and, on June 29, 2011, the court ruled on that motion in a memorandum of decision. The court stated: "Turning to the merits of the plaintiff's motion for reargument, the plaintiff is right that it did answer all the numbered interrogatories referred to in the defendants' amended motion for contempt. The plaintiff also explained the omission of certain documents on the grounds that this court sustained the plaintiff's objections to some of the documents being submitted.

"However, in its memorandum of decision of December 16, 2010, the court noted that 'discovery was not limited to the bundle of assets contained in [BS ALT A 2005-9] because the defendants challenged the entire transaction between JP Morgan Chase and the Bank of New York. Consequently, the defendants were entitled to inquire as to all assets transferred in the transaction.' As the court further pointed out this put an enormous burden on the plaintiff to provide information and documents requested by the defendants. 'However, that is a consequence of the complexity of the underlying transaction.'

"One of the defendants' inquiries relates to all the foreclosure cases brought on mortgages included in the assets transferred by JP Morgan Chase to the Bank of New York. The plaintiff has responded by providing over six hundred pages listing foreclosure cases. Although some may relate to assets other than [BS ALT A 2005-9], they do not relate to all the assets other than [BS ALT A 2005-9]. And, while they may relate to all the cases in which Wells Fargo Bank was servicer, no foreclosure cases were listed of assets serviced by other than Wells Fargo Bank. There were several other servicers of these assets.

"The court reiterates its conclusion stated in its December 16, 2010 decision, 'Thus, on its face, the plaintiff has failed to comply with the court's order.' The court has no sympathy for the burden put on the plaintiff to respond to the defendants' interrogatories and requests for production. It brought it on itself by bringing into play the entire transaction between JP Morgan Chase and Bank of New York. On reargument, the court finds the plaintiff has still not complied with the court's order and for reasons stated in the December 16, 2010 decision, finds that that noncompliance was wilful. The motion to reargue is granted and after reconsideration, the court reaffirms its holding the plaintiff in contempt, as stated in its decision of December 16, 2010."

On appeal, the plaintiff claims that the court lacked subject matter jurisdiction to render the judgment of contempt because the plaintiff withdrew the action as of right prior to the court holding the plaintiff in contempt. The plaintiff also claims that the court had no authority to order the plaintiff to respond to discovery requests on behalf of Bank of New York or on behalf of Bank of New York as trustee for trusts other than BS ALT A 2005-9, which trust held the note and mortgage executed by Sonja V. Bell, and that, accordingly, the

court improperly held the plaintiff in contempt for violating an overly broad order.

With respect to the plaintiff's claim that the court lacked subject matter jurisdiction after the plaintiff withdrew its complaint, even if we were to assume, without deciding, that the plaintiff is correct that its action against the defendants was withdrawn as of right immediately upon its filing a withdrawal form, the plaintiff acknowledged in its reply brief that after such withdrawal there remained a counterclaim pending against it. See Practice Book § 10-55.[3] Although the plaintiff further argues in its reply brief that the discovery requests that were the subject of the court's contempt finding are unrelated to the counterclaim, the defendants, in part, specifically argued in their motion for contempt that the plaintiff's failure to respond to the discovery requests delayed their ability to proceed on their counterclaim by presenting their case against the plaintiff. On the basis of the record, therefore, including the fact of the pending counterclaim against the plaintiff, we disagree with the plaintiff that the court lacked subject matter jurisdiction.

The plaintiff's second claim on appeal is that the court improperly held it in contempt for violating an order that was overly broad, requiring the plaintiff to respond to discovery requests on behalf of Bank of New York or on behalf of Bank of New York as trustee for trusts other than BS ALT A 2005-9, which trust held the note and mortgage executed by Sonja V. Bell. Specifically, the plaintiff argues that the court's discovery order procedurally was improper and the court lacked the authority to order compliance.

---

[3] Practice Book § 10-55 provides in relevant part: "The withdrawal of an action after a counterclaim, whether for legal or equitable relief, has been filed therein shall not impair the right of the defendant to prosecute such counterclaim . . . ."

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . [O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted; internal quotation marks omitted.) *In re Leah*, 284 Conn. 685, 692–94, 935 A.2d 1021 (2007).[4]

The plaintiff claims that the court had no authority to order it to turn over documents that belonged to Bank of New York or that belonged to Bank of New York as trustee for any trust other than BS ALT A 2005-9. The plaintiff argues that it is a separate entity from Bank of New York and that the court, therefore, improperly ordered it to turn over documents belonging to that separate entity, which ultimately led to the court's improper finding of contempt. We agree with the plaintiff.

We must determine whether the court's judgment of contempt constituted an abuse of discretion. See *In re Leah*, supra, 284 Conn. 694. To do so, we look at the

---

[4] Normally, we address the clarity and ambiguity of a court's order before determining whether the court abused its discretion in issuing a judgment of contempt. In the present case, however, we conclude, without deciding whether the order was clear and unambiguous, that the court exceeded its authority by ordering the plaintiff to turn over documents that belonged to a separate, nonparty entity, and we reverse the judgment of contempt on that basis.

scope of the discovery orders as determined by the court. On December 16, 2010, in its memorandum of decision on the defendants' motion for contempt, the court reiterated its conclusion stated in its decision on the plaintiff's objection to the defendants' interrogatories and requests for production dated November 12, 2009, that "discovery was not limited to the bundle of assets contained in [BS ALT A 2005-9] because the defendants challenged the entire transaction between JP Morgan Chase and the Bank of New York. Consequently, the defendants were entitled to inquire as to all assets transferred in the transaction." The court further stated: "One of the inquiries of the defendants relates to all the foreclosure cases brought against mortgages in the assets transferred by JP Morgan Chase to the Bank of New York. The plaintiff has responded by providing over six hundred pages listing foreclosure cases. But all of them relate only to assets in [BS ALT A 2005-9] . . . . Thus, on its face, the plaintiff has failed to comply with the court's order." The court concluded its decision holding the plaintiff in contempt for violating its order as follows: "The plaintiff violated the order by not answering a number of interrogatories and by not producing a list of foreclosure cases relating to the assets transferred by JP Morgan Chase to the Bank of New York, and further, by omitting hundreds of pages in the material the plaintiff did submit. As a consequence, the court finds the plaintiff in contempt . . . ."

On June 29, 2011, the court issued its memorandum of decision on the plaintiff's motion to reargue in which it affirmed its December 16, 2010 judgment of contempt. The court stated that "[the plaintiff] did answer all the numbered interrogatories in the defendants' amended motion for contempt. The plaintiff also explained the omission of certain documents on the grounds that this court sustained the plaintiff's objections to some of the

documents being submitted." The court then summarized its reasoning in its December 16, 2010 decision regarding the scope of discovery not being limited to "the bundle of assets contained in [BS ALT A 2005-9] because the defendants challenged the entire transaction between JP Morgan Chase and the Bank of New York." The court further stated: "The court reiterates its conclusion stated in its December 16, 2010 decision, 'Thus, on its face, the plaintiff has failed to comply with the court's order.' The court has no sympathy for the burden put on the plaintiff to respond to the defendants' interrogatories and requests for production. It brought it on itself by bringing into play the entire transaction between JP Morgan Chase and Bank of New York."

We agree with the plaintiff that the court's discovery order required the plaintiff to respond to interrogatories and requests for production as trustee for BS ALT A 2005-9, the sole plaintiff, *and* on behalf of Bank of New York, an entity not a party to this action. The plaintiff and Bank of New York, however, are separate entities.[5] See 90 C.J.S. 131, Trusts § 2 (2010) ("[a] fiduciary acting

[5] "The trustee is a proper party to assert the claims of a trust for any damages sustained to the trust during the term of the trust, and, as a general rule, the trustee is a proper person to sue or be sued on behalf of a trust. It is within the trustee's power, and a duty of the trustee, to institute actions and proceedings for the protection of the trust estate and the enforcement of claims and rights belonging to the estate, and to take all steps as are reasonably necessary." 76 Am. Jur. 2d 636, Trusts § 606 (2005). "A trustee's duties in connection with his or her office do not include the rights to present an argument pro se in the courts, since in this capacity the trustee would be representing interests of others and would therefore be engaged in the unauthorized practice of law." Id., § 606, observation, p. 636.

"The trustee is the legal owner of trust property, and as such the trustee is the proper party to actions affecting title to trust property. Thus, a trustee is a necessary party to any suit or proceeding involving a disposition of trust property or funds, and a trustee may maintain an action in law of equity against a third person to remedy an injury with respect to the trust property as if the trustee held the property free of the trust. Therefore, in actions adverse to a trust, a trustee may sue or defend in the trustee's own name, so long as that power is vested in the trustee." Id., § 611, p. 640.

in a representative capacity is a different person for judicial purposes from the same person acting in an individual capacity"). The interrogatories and requests for production to which the court ordered the plaintiff to respond were not limited to the trust assets. Furthermore, Bank of New York was never a party to this action. Practice Book §§ 13-6 and 13-9 permit parties to an action to serve interrogatories and requests for production only on other parties to that action.[6] Despite Bank of New York's nonparty status, the court broadened the scope of the interrogatories and requests for production to include the entire transaction between JP Morgan Chase and Bank of New York, a nonparty. Thus, pursuant to Practice Book §§ 13-6 and 13-9, the court had no authority to order the plaintiff to turn over documents that belonged to Bank of New York, a separate nonparty entity, nor did it have any authority in the circumstances of this case to order the plaintiff as trustee for BS ALT A 2005-9 to turn over documents from other trusts. The court had the authority to order the plaintiff to respond to discovery requests relating to BS ALT A 2005-9. The court, having ordered the plaintiff to turn over documents that belonged to a nonparty and to other trusts, and having found the plaintiff in contempt for failing to do so, acted beyond the scope of its authority. Accordingly, we conclude that the court's judgment holding the plaintiff in contempt was improper and, therefore, an abuse of the court's legal discretion.

---

[6] *Practice Book § 13-6 (a) provides in relevant part:* "In any civil action . . . any party may serve . . . written interrogatories . . . upon any other party to be answered by the party served. . . ."

Practice Book § 13-9 (a) provides in relevant part: "In any civil action . . . any party may serve . . . upon any other party a request to afford the party submitting the request the opportunity to inspect, copy, photograph or otherwise reproduce designated documents . . . or to inspect and copy . . . any tangible things in the possession, custody or control of the party upon whom the request is served . . . ."

The judgment is reversed and the case is remanded with direction to vacate the judgment of contempt.

In this opinion the other judges concurred.