******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPH KOLASHUK *v.* KYLE HATCH
(AC 41571)

Lavine, Alvord and Lavery, Js.

*Syllabus*

The plaintiff in error, A, who was the attorney for the defendant, H, filed a
writ of error, challenging the imposition of sanctions and the award of
attorney's fees against him by the trial court. In the underlying personal
injury action, the defendant in error, K, by and through his mother and
next friend, sought to recover damages from H for, inter alia, negligence
in connection with personal injuries sustained by K when K, who was
riding his bicycle, and a motor vehicle operated by H collided. The
complaint alleged, inter alia, that H was operating his vehicle while
typing, sending, and/or reading text messages from his cell phone. During
the discovery phase, H testified at his deposition that, minutes before
the collision, he had sent a text message on a cell phone. H stated that
the cell phone was a company work phone and that the account was
in the name of his employer, H Co. Subsequently, the law firm represent-
ing K filed a motion to compel production of the relevant cell phone
records from the date of the collision, which the trial court granted. A
did not provide the requested cell phone records, and K's attorney, R,
filed motions for sanctions for A's alleged violation of the court's order.
In response to R's motions, A claimed that he had fully complied with
the court's order to the best of his abilities because A's client, H, did
not own the cell phone records requested by R, and that it would have
been illegal and unethical for him to provide R with records that H did
not own. Prior to the hearing on R's second motion for sanctions, R
obtained the relevant cell phone records from an attorney representing H
Co., but the court, nevertheless, granted R's second motion for sanctions
against A. Thereafter, R filed a request for attorney's fees, which the
trial court granted in part. Subsequently, A filed a writ of error in our
Supreme Court, which transferred the matter to this court. *Held*:
1. K could not prevail on his claim that this court lacked subject matter
jurisdiction, which was based on his claim that A's writ of error should
be dismissed because it was not taken from a final judgment in that the
sanctions and the attorney's fees against A did not terminate a distinct
and separate proceeding because the relevant orders were issued during
the discovery phase of his personal injury case, the requested cell phone
records were necessary to resolve K's case, and those records were
inextricably intertwined with K's case: although the requested records
may have been integral to K's personal injury action against H, those
records were the property of H Co., and, thus, neither A nor his client,
H, owned or had possession of the cell phone records, and K's reliance
on the general rule that an interlocutory order requiring a witness to
submit to discovery is not a final judgment and, therefore, is not immedi-
ately appealable was unavailing, as A was neither a witness nor a party
to the underlying personal injury action but, rather, was an attorney
representing H, the defendant in the underlying action; moreover, K
could not prevail on his claim that the imposition of sanctions and
attorney's fees against A did not terminate a distinct and separate pro-
ceeding because the trial court did not find A to be in contempt, as our
Supreme Court previously has concluded that a law firm that was not
a party need not wait to be found in contempt for its good faith failure to
comply with a discovery order to seek appellate review of that discovery
order, and, in the present case, A did not comply with the trial court's
discovery order on the basis of his good faith belief that to do so would
violate a statute because H did not own the cell phone records, and,
thus, A did not have to be found in contempt to seek judicial review of
the sanctions and the attorney's fees awarded against him; accordingly,
the imposition of sanctions and the award of attorney's fees against A,
a nonparty to the underlying personal injury case, terminated a separate
and distinct proceeding, and, thus, the writ of error was filed pursuant
to a final judgment.
2. The trial court erred as a matter of law by ordering A to produce cell

phone records that neither he nor H owned or possessed, issuing sanctions against A and awarding attorney's fees to counsel for K, as the court's orders regarding the imposition of sanctions and the award of attorney's fees against A constituted an abuse of discretion; this court has previously determined that a party may not be ordered to produce documents owned by or in the possession of third parties, and, in the present case, the trial court's order that A, a nonparty, turn over the relevant cell phone records that belonged to H Co., a separate, nonparty entity, constituted an abuse of discretion, and although R claimed that H's parents owned H Co. and that H, therefore, easily could have obtained the relevant cell phone records had A instructed him to do so, H and H Co. were separate legal entities, and A was sanctioned for failing to do something that he, in good faith, believed would violate a statute because H did not own or possess the cell phone records.

Argued October 15, 2019—officially released January 7, 2020

*Procedural History*

Writ of error from the orders of the Superior Court in the judicial district of New London, *Bates, J.*, granting the motion for sanctions filed by the defendant in error against the plaintiff in error, and *Calmar, J.*, awarding attorney's fees to the attorney of the defendant in error, brought to the Supreme Court, which transferred the matter to this court. *Writ of error granted*; *remanded with direction*.

*Maury M. Garrett, Jr.*, with whom was *Lawrence H. Adler*, self-represented, for the plaintiff in error (Lawrence H. Adler).

*Kelly E. Reardon*, with whom, on the brief, was *Laura A. Raymond*, for the defendant in error (Joseph Kolashuk).

*Opinion*

LAVINE, J. The plaintiff in error, Lawrence H. Adler, the attorney for the defendant, Kyle Hatch, filed a writ of error with our Supreme Court,[1] challenging the sanctions issued against him by the trial court, *Bates*, *J.*, and the imposition of attorney's fees ordered by the trial court, *Calmar*, *J.* The case of *Bank of New York* v. *Bell*, 142 Conn. App. 125, 63 A.3d 1026, cert. denied, 310 Conn. 901, 75 A.3d 30 (2013), and cert. denied, 310 Conn. 901, 75 A.3d 31 (2013), which stands for the proposition that a party may not be ordered to produce documents owned by or in the possession of third parties, is dispositive of Adler's claims. We, therefore, grant the writ of error.

The following facts, as found in the record, underlie Adler's claims. On March 5, 2016, the minor plaintiff/ defendant in error, Joseph Kolashuk, was riding his bicycle on Raymond Hill Road in Oakdale when he and a motor vehicle operated by Hatch, collided. Kolashuk suffered injuries and, by and through his mother and next friend, Danielle Kolashuk, commenced a personal injury action against Hatch. The complaint sounded in negligence and statutory and common-law recklessness. It alleged, in relevant part, that Hatch was operating his motor vehicle while typing, sending, and/ or reading text messages "from" his cell phone (phone) and operating his motor vehicle at a high rate of speed while using a phone in his hand.[2] The Reardon Law Firm, P.C. (firm), represented Kolashuk. Adler entered an appearance on behalf of Hatch.

On March 6, 2017, the firm noticed Hatch's deposition duces tecum, requesting that he produce at the deposition (1) any and all phone records of March 5, 2016, including bills, invoices, text messages and e-mails; and (2) the actual phone he used on March 5, 2016. On March 15, 2017, Hatch objected to both production requests and moved for a protective order, stating in part that the records were not within his knowledge or possession.[3]

On March 7, 2017, Attorney Robert I. Reardon, Jr., noticed the depositions of and issued subpoenas to the keepers of records for Verizon Wireless (Verizon) and AT&T, Inc., commanding that they produce "[a]ny and all . . . phone . . . records from March 5, 2016 between [10] and [11 a.m.] for phone number [for Hatch] including call details, text details, phone calls made and/or received, text messages sent and/or received, and [e-mails] sent and/or received." Hatch filed motions to quash the subpoenas duces tecum issued to the service providers and motions for a protective order, stating in relevant part that the request for production was not valid in that it violated General Statutes § 16-247u (b).[4]

During his deposition on March 17, 2017, Hatch testi-

fied, in part, that minutes before the collision, he had sent a text message on a phone with service provided by Verizon. On the record, Reardon articulated his efforts to obtain the phone records from the service providers and that he had been unsuccessful in doing so. He produced a facsimile received from Verizon, indicating that it had no records for the number in Hatch's name. Adler reviewed the facsimile and stated: "I will help you because I think you and I can probably agree, because it's ultimately going to be a nonissue, but I think the reason is because it's not in the account name of . . . Hatch. That is his number, but it's not in his name." Reardon asked Hatch whose name was on the account. Hatch stated that the phone was a company work phone and that the account is in the name of R & W Heating Energy Solutions, LLC (R & W Heating), his employer.[5] Following a discussion between counsel, Adler stated to Reardon: "You and I can probably, early next week, work out a parameter of a production. I can probably get you what you need."

At a point later in the deposition, Reardon asked Hatch if he had brought the phone with him. He had not; the phone's screen had broken, and although he had it repaired, he did not know whether the phone still contained data. Reardon asked Hatch to give the phone to Adler to preserve. Adler agreed to hold the phone in escrow. Hatch's counsel filed a motion for a protective order regarding the phone on the ground that, pursuant to Connecticut statute, one may not request phone records from one to whom such records do not belong and that it is impermissible for a party to provide phone records belonging to third parties. Hatch's counsel invited Reardon to subpoena the phone records from R & W Heating or to subpoena the records from R & W Heating's service provider.

On March 23 and April 26, 2017, Reardon sent a letter to Adler requesting Hatch's phone records.[6] By motion dated April 13, 2017, the firm sought to compel production, asking the court to order Hatch to produce the phone records as requested in the notice of Hatch's deposition, among other things. On May 9, 2017, Judge Bates issued an order stating that "[t]he . . . phone records shall be produced for the time requested, which appears to the court to be reasonably limited in time."

Hatch did not produce the records, and by motion dated May 2, 2017, the firm filed a motion for a protective order for certain individuals whose depositions Adler had noticed and for sanctions against Hatch for his continued refusal to provide the phone records, "which is the subject of a pending motion to compel filed" on April 13, 2017. The firm also sought a sanction of $380.96 for the expenses the firm had incurred in its effort to obtain the phone records of a third party whom Hatch allegedly called on the morning of the collision.[7] There was a further exchange of correspondence

between counsel for the parties in which Joseph M. Barnes, an attorney at the firm, stated that during a status conference, Adler had confirmed "that [he] had the records we were requesting and could get them to my office by Monday, [May 22, 2017]." Adler replied by letter stating, "my client does not have possession or control of any records for the phone at issue. I also did not represent that I had them in my possession, but simply indicated what I believed they showed. I have asked repeatedly and will ask again, that you confirm that if I can obtain the records that you seem to be seeking and provide them to you, you withdraw any further requests for possession of my client's or his [parents'] business . . . phone or any broader requests for phone records beyond the time limit specified by Judge Bates. Once I receive this confirmation, I will make the arrangements for what I understand you are looking for with the appropriate parties."

On June 12, 2017, Reardon filed a motion for default and sanctions for violation of Judge Bates' order. In addition to a default against Hatch, Reardon sought attorney's fees, costs and a sanction of $5000 against Hatch for the time the firm spent attempting to obtain his phone records. Reardon also moved for an order of contempt against Adler for his wilful refusal to comply with the court's order.

On June 14, 2017, Reardon and Attorney Andrew B. Goodwin,[8] representing Hatch, appeared before Judge Bates. At that time, Goodwin stated in part: "I have stated to you repeatedly that my client does not have cell records, and you have heard from both me and from Verizon that the cell records are not in my client's name. It is only recently that you have been willing to limit the time period, as the court mandated, which was a significant portion of my objection. I also have a dispute about your entitlement effort to have access to the actual cell phone that has extensive unrelated material and, likely, attorney-client privileged material.

"Here, once again, is my suggestion. I will discuss with my client's employer turning over the cell records—my client's employer turning over the cell records with the limitations placed by the judge in terms of date and time period, in accordance with the order, of course. I will do that voluntarily if, and only if, they do not satisfy you with the parameters that you defined, which is, according to your May 31, 2017 letter, that the records produced are sufficient to determine when your—that's Mr. Hatch—client was on the phone from 10 a.m. to 11 a.m. on March 5, 2016.

"If you cannot make that determination after reviewing the records, I will agree to a judicial review of the phone to the extent this information is still on there, only for the date and time periods referenced. For reasons stated above, I will not simply turn over the phone if I can obtain it from my client's employer."[9]

During the June 14, 2017 hearing, Judge Bates asked whether the order should be restructured because the owner of the phone is not a party to the action. Thereafter, the court stated: "I'm going to issue a clarification that when I referred to his cell phone records, I was referring, if unartfully, to the records of the cell phone he was using. I understand that . . . the record of the calls is in the hands of the attorney representing [Hatch], and *I order the attorney to turn those records over.* Again, it's for the two hour interval. And I'm not going to make a limit. You know, I'm not going to prevent counsel, if there is reason to get more cell phone records down the line, to request those. It's not going to be a condition of this order, but the order is only affecting that . . . two hour period of time. So, that will be a clarification. As to whether or not the difference which I referred to as being . . . *a difference without a* [*distinction*], I think that's going to be part of the sanctions argument that we'll have to have." (Emphasis added.) The court also ordered that the records be produced within five business days.[10]

By motion dated July 12, 2017, Reardon filed a second motion for sanctions due to what he termed Adler's "deliberate defiance" of the court's orders. The motion sought a sanction of $5000 against Adler, a finding of contempt against Adler, and a default against Hatch for wilful violation of a court order. On July 27, 2017, Judge Bates held an evidentiary hearing on Reardon's motion for sanctions. At the hearing, Hatch testified that his phone number is connected to whatever phone he is using, the phone he was using on the date of the collision belongs to R & W Heating, and he could not remember whether he had seen the phone records. In addition, his parents are the owners of R & W Heating. He presumed that the phone records are in his mother's possession. He also testified that he had turned the phone at issue over to his parents, as he and his parents decided that "it was better for them to keep it safe." He further testified that he and his parents had no objection to turning over the phone records to Reardon. The court opined that Hatch had constructive possession of the phone and that the defense was "*hiding behind a sort of legal technicality*" as to who owned the phone. (Emphasis added.) Adler argued that the phone is not what is at issue, the phone records are at issue. He also argued that Hatch never had possession of the phone records, which are in the possession of the owners of R & W Heating. The following colloquy transpired:

"[Adler]: Your Honor, the only thing I've been talking about in the entire [proceeding] is Your Honor's order, which is about the records. The phone is not the subject of anything pending.

"[Judge Bates]: The phone—when I refer to the phone, I'm talking about the phone records. . . .

"[Adler]: We never had them. We didn't turn them over to the parents. We've never had the phone records. The parents get the bills, they pay the bills, they have them at their business." The hearing was continued.

On July 28, 2017, Ronald Goldstein, an attorney representing R & W Heating, gave Reardon the phone records.

Judge Bates continued the hearing on the motion for sanctions on August 2, 2017, and ordered Reardon to file time sheets and billing rates for an award of attorney's fees. On September 1, 2017, Judge Bates issued a memorandum of decision on Reardon's motion for sanctions, from which we quote in part. The court stated that Reardon had filed a motion for sanctions against Adler "on the basis that he failed to turn over or even seek to turn over [Hatch's] . . . phone records from the cell phone that [Hatch] used on the date of the subject collision. This court ordered [Hatch] on May 9, 2017 . . . to make those cell phone records available.

"[Adler] did not comply with the order of the court until July 28, 2017, when arrangements were made with attorneys for the owners of the company, R & W Heating, independently to turn over the requested cell phone logs. As a result of the delay over the requested documents, [Reardon] is seeking attorney's fees and costs in obtaining these documents and a sanction of $5000 against Attorney Adler for his alleged failure to comply with the court order.

"In response to [Reardon's] motions, [Adler] argues that [Hatch] has fully complied with the court's order to the best of his abilities because Adler's client . . . Hatch, did not own the cell phone records requested by [Reardon] and ordered produced by the court, and, therefore, had no obligation to comply.

"The court notes that in a deposition of . . . Hatch on March 17, 2017 . . . Adler, when asked if he could produce the cell phone records, assured . . . Reardon, 'I'm sure we can work something out. I don't have any objection to you getting any records, so we will try to work something out.' Adler, on that date, also said to Reardon, 'You and I could probably, early next week, work out a parameter of production. I can probably get you what you need.' It is undisputed that Adler failed to follow through on his commitment until outside counsel provided the necessary documentation several months later."[11]

The court continued: "[Kolashuk] submits that [Adler] needlessly and intentionally prolonged the discovery process by refusing to provide the requested cell phone records. However, [Adler] argues that it would have been illegal and unethical for him to provide [Reardon] with records that [Hatch] did not own. Specifically, [Hatch] relies solely on . . . § 16-247u (b), which provides in relevant part: 'No person shall: (1) Knowingly procure, attempt to procure, solicit or conspire

with another to procure a telephone record of any resident of this state without the authorization of the customer to whom the record pertains . . . or (3) receive a telephone record of any resident of this state with the knowledge such record has been obtained without the authorization of the customer to whom the record pertains . . . .'

"However, § 16-247u (c) provides in relevant part: 'The provisions of this section shall not apply to any person acting pursuant to a valid court order . . . .'[12] This court's order . . . made clear that the cell phone records were to be produced for the time requested by [Reardon], which was from 10 . . . to 11 a.m. on March 5, 2016, the date and time of the accident. Despite [Adler's] assurance in the deposition that he would arrange to have the cell phone records produced, he reneged on this assurance, stating [that] the cell phone records were owned by R & W Heating—a company owned by [Hatch's] parents, not by [Hatch] himself. Therefore, according to [Adler, Hatch] could not deliver on his promise to work things out and produce the records. However, [Adler] offered no evidence that he asked [Hatch] or the owners of R & W Heating to allow counsel to fulfill his assurance and provide access to cell phone records. Instead, [Adler] tried to use the production of the cell phone records as a lever to limit discovery, for example, seeking a quid pro quo that there would be no further request to examine the cell phone. . . .

"In the discovery context . . . the factors in imposing sanctions to be considered include: '(1) whether noncompliance was caused by inability, rather than wilfulness, bad faith or other fault; (2) whether and to what extent noncompliance caused prejudice to the other party, including the importance of the information sought to that party's case; and (3) which sanction would, under the circumstances of the case, be an appropriate judicial response to the noncomplying party's conduct.' *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, [257 Conn. 1, 15, 776 A.2d 1115 (2001)].

"Here, [Adler's] failure to respond to [Reardon's] discovery request and the violation of the court's order . . . were not caused by inability to comply. Rather, the correspondence between [counsel for the parties] demonstrates the contrary. . . . [Adler's May 18, 2017] letter demonstrates that, at the very least, [he] could have inquired with R & W [Heating] regarding its willingness to provide the records or sign a release, allowing [him] to obtain the records in compliance with this court's order. There is no evidence that he did so.

"Furthermore, the information that was sought by [Reardon] is central to the . . . claims. Specifically, [Kolashuk] has alleged that [Hatch] was using a cell phone at the time of the collision on March 5, 2016. [Adler's] failure to comply with the court's order preju-

diced [Reardon's] ability to fully investigate [Kolashuk's] claims against [Hatch]. . . .

"Having found that [Adler] is in violation of Practice Book § 13-14 (a), [Adler] will pay [Kolashuk] $2500 in sanctions within thirty days of this order. [Reardon] is also invited to present the court with an accounting of time spent by [the firm] seeking the cell phone records and a request for payment of legal fees based on counsel's customary hourly rate plus costs." (Citations omitted; footnote added.)

Reardon, thereafter, filed a request for attorney's fees in the amount of $41,277.26; the request was later reduced to $40,800. Adler objected, arguing that the request was not allowed pursuant to the rules of practice, was duplicative, and was unreasonable. On November 22, 2017, Judge Calmar held a hearing to determine the amount of attorney's fees Adler was to pay. Judge Calmar issued a memorandum of decision on January 30, 2018, in which he determined that attorney's fees in the amount of $5000 was reasonable and ordered Adler to pay Reardon that amount in addition to the sanction imposed by Judge Bates.

In February, 2018, Adler filed the present writ of error, in which he alleged, among other things, that the court improperly sanctioned him for failing to abide by an order that the court never gave Hatch,[13] and ordered him to commit an illegal act in violation of a statute. He further alleged that it was inappropriate for the court to sanction him for failure to engage in an act that he believed, in good faith, would violate the statute. Moreover, he claimed that the court abused its discretion in finding that there was bad faith or misconduct on his part, erred in finding that he had a duty to engage in efforts to procure discovery from third parties, erred in placing the burden on him to secure discovery from third parties, rather than on Kolashuk, and abused its discretion in granting attorney's fees for his failure to provide documents and things belonging to third parties.

During oral argument before us, Adler's counsel, Maury M. Garrett, Jr., argued that *Bank of New York* v. *Bell*, supra, 142 Conn. App. 125, was controlling of the issues in the writ of error. Thereafter, we sua sponte ordered counsel to file supplemental memoranda addressing what effect, if any, the case of *Bank of New York* has on our analysis of the writ of error.

I

Before addressing the merits of the writ of error, we address Kolashuk's claim that this court lacks jurisdiction. We disagree.

Kolashuk claims that Adler's writ of error should be dismissed because it was not taken from a final judgment. "The statutory right to [a writ of error] is limited to appeals by aggrieved parties from final judg-

ments. General Statutes §§ 52-263, 51-197a; see Practice Book § [72-1].[14] Because our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must always determine the threshold question of whether the [writ of error] is taken from a final judgment before considering the merits of the claim." (Footnote added; internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 750–51, 830 A.2d 711 (2003). "The lack of a final judgment implicates the authority of this court to hear [a] writ of error because it is a jurisdictional defect." Id., 750. "A challenge to the jurisdiction of the court presents a question of law." (Internal quotation marks omitted.) *Jimenez* v. *DeRosa*, 109 Conn. App. 332, 337, 951 A.2d 632 (2008). Our review of questions of law is plenary. *State* v. *Parrott*, 262 Conn. 276, 286, 811 A.2d 705 (2003).

Final judgment questions are decided pursuant to *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983). Our Supreme Court has "determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. In the present case, we conclude that the imposition of sanctions and the award of attorney's fees against Adler, a nonparty to the underlying personal injury case, terminated a separate and distinct proceeding, and, thus, the writ of error was filed pursuant to a final judgment.

Kolashuk, however, contends that Adler fails to meet the first prong of the *Curcio* test because the sanctions and the attorney's fees against Adler do not terminate a distinct and separate proceeding, as the orders were issued during the discovery phase of his personal injury case. Moreover, he continues, the phone records were necessary to resolve his case; see *Niro* v. *Niro*, 314 Conn. 62, 71 n.4, 100 A.3d 801 (2014); and are inextricably intertwined with it. See *McConnell* v. *McConnell*, 316 Conn. 504, 513, 113 A.3d 64 (2015). We disagree. The facts and the discovery at issue in the present case are distinguishable from those in *Niro* and *McConnell*.

In *Niro*, a dissolution action, the plaintiff wife sought the financial records of businesses and trusts in which the defendant husband and his brother, a plaintiff in error, were partners. *Niro* v. *Niro*, supra, 314 Conn. 64–65. She sought the records to determine her share of the marital assets in the face of allegations that the assets of the businesses and trusts had been misappropriated. Id., 65. The brother objected to the disclosure of certain records and filed a motion to quash a subpoena duces tecum and a motion for a protective order. Id. Following a hearing, the trial court ordered the brother to produce certain records. Id., 66. The brother filed

a writ of error, which our Supreme Court dismissed, concluding that the trial court's order to produce was an interlocutory order that did not arise out of a separate and distinct proceeding because the trial court needed the information in the records to distribute equitably the marital assets in the dissolution action. Id., 69–70, 73. The husband's brother was in possession of records that were integral to a central issue in the divorce action, i.e., the value of the marital assets. Id., 70. The records, therefore, were integral to the resolution of the dissolution matter in *Niro*. In the present case, the phone records may be integral to Kolashuk's case, but Adler did not own them and was not in possession of them. Hatch, Adler's client, also did not own the phone or its records, and was not in possession of them. The phone records at issue are the property of R & W Heating.

*McConnell* was a probate appeal. *McConnell* v. *McConnell*, supra, 316 Conn. 507. The issue before our Supreme Court was whether a trial court's order directing "attorneys who [were] not parties and who [were] not representing parties to underlying litigation to appear in court and subject themselves to examination, was a final judgment that may be challenged by way of a writ of error." Id. The plaintiff claimed that he did not receive notice of a Probate Court hearing regarding family trust funds pursuant to an application for an accounting of a family trust filed by one of his sisters, which resulted in a distribution of significant trust funds primarily to the plaintiff's two sisters. Id., 508. The trial court ordered the lawyers who represented the sister in the Probate Court to appear at a hearing to show cause. Id., 507, 509. The lawyers, the plaintiffs in error, were ordered "to appear in court so that they could be examined about certain events that took place during the Probate Court proceedings on [the sister's] application. Because [the sisters] had invoked their fifth amendment right not to testify at the hearing on the order to show cause, the [lawyers] for the parties to the Probate Court proceedings were a critical source of information regarding the failure to give notice of those proceedings to [the plaintiff brother]. Thus, the discovery order was directed at materials that were required by the trial court in order to resolve the issues raised in [the probate] appeal, and, therefore, the order was inextricably intertwined with the underlying proceeding." Id., 512–13. Our Supreme Court determined that the writ of error was not taken from a final judgment. Id., 513. The discovery order was directed at materials that were required by the trial court to resolve the issues raised in the plaintiff's probate appeal, and, "therefore, the order was inextricably intertwined with the underlying proceeding." Id. The discovery order "did not constitute a final judgment under the first prong of *Curcio* merely because the [lawyers] were not parties to [the brother's] appeal." Id. In the present case, Adler

was not present at the time of the collision, nor was he the owner of the phone or the phone records. Although the phone records in the present case may be integral to Kolashuk's personal injury action against Hatch, Adler did not represent the owner of the phone and its records, a fact that Judge Bates acknowledged. Moreover, unlike the plaintiffs in error in the *Niro* and *McConnell* cases, Adler was found in violation of the court's order.

Kolashuk also argues that "[t]he general rule established by our [Supreme Court] case law is that an interlocutory order *requiring a witness* to submit to discovery is not a final judgment and, therefore, is not immediately appealable." (Emphasis added.) *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 625, 692 A.2d 794 (1997). That argument fails because Adler is neither a witness, nor a party, to the underlying action. See part II of this opinion. He is a lawyer representing Hatch, a defendant in the underlying action.

Kolashuk asserts, citing *Green Rock Ridge, Inc.* v. *Kobernat*, 250 Conn. 488, 498, 736 A.2d 851 (1999), that the imposition of sanctions and attorney's fees against Adler did not terminate a distinct and separate proceeding because the trial court did not find Adler to be in contempt. In *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 48 A.3d 16 (2012), our Supreme Court concluded that a law firm that was not a party need not wait to be found in contempt for its good faith failure to comply with a discovery order to seek appellate review of the discovery order. Id., 757, 762–69. In the present case, Adler did not comply with Judge Bates' discovery order on the basis of his good faith belief that to do so would violate a statute because Hatch did not own the phone records. Pursuant to *Woodbury Knoll, LLC*, he did not have to be found in contempt to seek judicial review of the sanctions and attorney's fees awarded against him.

In *Woodbury Knoll, LLC*, our Supreme Court analyzed the final judgment question pursuant to *Abreu* v. *Leone*, 291 Conn. 332, 968 A.2d 385 (2009). In *Abreu*, to determine "[w]hether there was subject matter jurisdiction, [our Supreme Court] reviewed its final judgment jurisprudence regarding appeals from discovery orders and identified three points salient to determining whether a discovery order could be considered an appealable final judgment. First, the court's focus in determining whether there is a final judgment is on the *order* immediately appealed, not [on] the underlying action that prompted the discovery dispute. . . . Second, determining whether an otherwise nonappealable discovery order may be appealed is a fact specific inquiry, and the court should treat each appeal accordingly. . . . Third, although the appellate final judgment rule is based partly on the policy against piecemeal appeals and the conservation of judicial resources . . .

there [may be] a counterbalancing factor that militates against requiring a party to be held in contempt in order to bring an appeal from a discovery order." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 760–61.

Applying the three *Abreu* points to the facts of the present case, we conclude that Adler's writ of error emanates from a final judgment. Adler challenges the sanctions and attorney's fees imposed on him, a nonparty, which are entirely unrelated to Kolashuk's personal injury action. Moreover, Reardon and Kolashuk received the phone records they were seeking before the sanctions and attorney's fees were imposed on Adler. The sanctions are unrelated to the prosecution of the personal injury action, which we assume is proceeding apace now that the firm has the records. The imposition of the sanctions, therefore, terminated a distinct and separate proceeding from the personal injury case.

As our Supreme Court held in *Woodbury Knoll, LLC*, there are policy considerations that militate against Adler's having to wait until there is a judgment in Kolashuk's case before he challenged the sanctions and attorney's fees. Our Supreme Court concluded "that a counterbalancing factor exists to justify not subjecting [an attorney] to the ordinary rule that one must be held in contempt in order to challenge a trial court's discovery order, namely, the concern of requiring an attorney, as an officer of the court, to violate a court order and otherwise to behave inconsistently with the Rules of Professional Conduct in order to bring an appeal." Id., 757. Adler was representing Hatch, the defendant, and believed that he was prohibited by statute from turning over the phone records, which, more significantly, neither he nor his client owned or possessed. Adler further argues that it would be profoundly prejudicial to a defendant client if the attorney were forced to continue to refuse to comply with discovery until the court found the attorney to be in contempt. It would create a conflict of interest whereby an attorney must be subjected to professional scorn and reputational harm to protect a client's right to appeal a discovery order. We find this argument persuasive.

For the foregoing reasons, we conclude that Adler's writ of error was taken from a final judgment and that this court has subject matter jurisdiction.

## II

As noted, the principal issues presented by the writ of error are whether the trial court erred as a matter of law by (1) ordering Adler to produce records that neither he nor his client owned or possessed and (2) issuing sanctions against Adler and awarding attorney's fees to Kolashuk's counsel.[15] We grant the writ of error.

As previously stated, the present case is controlled by *Bank of New York* v. *Bell*, supra, 142 Conn. App. 125, which held that it was improper for the trial court to order the plaintiff in that case to turn over documents that belonged to a separate, nonparty entity. Id., 133–34. *Bank of New York* involved the following facts. The trial court found the plaintiff, Bank of New York, as trustee for BS ALT A 2005-9, to be in contempt for failing for more than one year to respond fully to the defendant Jonathan S. Bell's interrogatories and requests for production. Id., 127. The court found that the failure constituted a wilful violation of its prior orders, which met the requirements of *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17–18.[16] Bell sought to obtain documents regarding all of the mortgage foreclosure cases relating to assets transferred by JPMorgan Chase Bank, N.A., to Bank of New York. *Bank of New York* v. *Bell*, supra, 128. The plaintiff appealed, claiming in part that the court "had no authority to order it to turn over documents that belonged to Bank of New York or that belonged to Bank of New York as trustee for any trust other than BS ALT A 2005-9. The plaintiff argue[d] that it is a separate entity from Bank of New York and that the court, therefore, improperly ordered it to turn over documents belonging to that separate entity, which ultimately led to the court's improper finding of contempt." Id., 131. This court agreed for the following reasons.

"Bank of New York was never a party to this action. Practice Book §§ 13-6[17] and 13-9[18] permit parties to an action to serve interrogatories and requests for production only on other parties to that action. Despite Bank of New York's nonparty status, the court broadened the scope of the interrogatories and requests for production to include the entire transaction between JPMorgan Chase [Bank, N.A.] and Bank of New York, a nonparty. Thus, pursuant to Practice Book §§ 13-6 and 13-9, the court had no authority to order the plaintiff to turn over documents that belonged to Bank of New York, a separate nonparty entity, nor did it have any authority in the circumstances of this case to order the plaintiff as trustee for BS ALT A 2005-9 to turn over documents from other trusts. The court had the authority to order the plaintiff to respond to discovery requests relating to BS ALT A 2005-9." (Footnotes added and omitted.) Id., 134.

In his supplemental brief in the present case, Adler argues that Judge Bates' order that he turn over the phone records that belonged to R & W Heating, a separate, nonparty entity, constituted an abuse of discretion, as the court was without authority to do so. It goes without saying that Adler is not a party to the personal injury litigation. See Practice Book § 13-9. Although *Bank of New York* concerned a finding of contempt, the orders of the judges in the present case flow from

the same underlying abuse of discretion by issuing a discovery order against a nonparty—Adler—and punishing the nonparty for failing to comply with a court discovery order that violated our rules of practice. Moreover, Adler's client, Hatch, did not own or possess the phone records. Reardon argued in the trial court that Hatch's parents owned R & W Heating, and that Hatch easily could have obtained the phone records had Adler instructed him to do so. The relationship between Hatch and his parents is beside the point. The fact remains that Hatch and R & W Heating are separate legal entities and that Adler was sanctioned for failing to do something he believed would violate a statute. We conclude that the orders regarding the imposition of sanctions and the award of attorney's fees against Adler constitute an abuse of discretion. We, therefore, grant the writ of error and remand the case to the trial court.

The writ of error is granted and the case is remanded with direction to vacate the sanctions and the award of attorney's fees against Adler.

In this opinion the other judges concurred.

[1] Our Supreme Court transferred the writ of error to this court pursuant to Practice Book § 65-1.

[2] Hatch denied the material allegations of the complaint and alleged several special defenses, in part, that Kolashuk's injuries were due to his own carelessness and negligence in that he suddenly rode his bicycle into the street directly into the path of oncoming traffic.

[3] Hatch's objection to the records request stated in pertinent part: "*The information is not directed to the proper entity nor within* [Hatch's] *knowledge or possession.*

"[Kolashuk's] notice of deposition is simply being used as a way to circumvent the rules of discovery. This case is a standard motor vehicle accident case and, therefore, 'unless upon motion, the judicial authority determines that such interrogatories are inappropriate in the particular action,' only the standard form interrogatories are allowed. Practice Book § [13-6] (b). Here, [Kolashuk] has attached a production request which goes far beyond the standard discovery requests to the deposition notice, and seeks documentation that is not allowed for in the standard discovery requests, and is inappropriate for discovery in this matter." (Emphasis added.)

[4] General Statutes § 16-247u (b) provides in relevant part: "No person shall: (1) Knowingly procure, attempt to procure, solicit or conspire with another to procure a telephone record of any resident of this state without the authorization of the customer to whom the record pertains . . . (3) receive a telephone record of any resident of this state with the knowledge such record has been obtained without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means."

[5] Hatch's parents are the owners of R & W Heating.

[6] In the March 23, 2017 letter, Reardon stated in relevant part: "Finally, we are still waiting for the documentation we requested from . . . Hatch regarding his cell phone usage and text message usage on the day of the incident. Please provide it at once, as you indicated you would during . . . Hatch's deposition."

In the April 26, 2017 letter, Reardon stated in relevant part: "In addition, pursuant to our telephone conversations and correspondence to you, you still have not . . . provided [Hatch's] cell phone records and the inspection of the cell phone that was in use at the time of the accident."

[7] The motion to compel sought "an order that . . . Hatch produce the requested information himself or consent to the production of the information by Verizon. Specifically . . . any and all cellular phone records from March 5, 2016 including bills, invoices, text messages and e-mail; and the actual cellular phone [Hatch] used on March 5, 2016; or an order that [Hatch] consent to Verizon producing any and all cellular phone records from March 5, 2016 between [10] and [11 a.m.] for phone number [860-***-****] including

call details, text details, phone calls made and/or received, text messages sent and/or received, and e-mails sent and/or received."

The firm represented that Adler promised to produce the records at issue and attached a portion of Hatch's deposition transcript. The transcript of Hatch's deposition, however, indicates that Adler stated to Reardon: "I'm sure [that] we can work something out. I don't have an objection to you getting any records. It was just as phrased. So, we'll try to work something out. . . . You and I can probably, early next week, work out a parameter of a production. I can probably get you what you need."

[8] Goodwin is associated with the Adler Law Group, LLC.

[9] In Kolashuk's brief to this court, he represented that Hatch's counsel disclosed for the first time at the June 14, 2017 hearing that the phone and corresponding records were owned by Hatch's employer. As noted previously, during the March 17, 2017 deposition, Adler stated that the account was not in Hatch's name, and Hatch testified that the phone belonged to his employer, R & W Heating, a business owned by his parents.

[10] During the June 14, 2017 hearing, Reardon represented to the court that Adler had the records, i.e., "if you take a look at the letter from Mr. Adler, it says he has possession," referring to an exhibit attached to the motion. We, however, have reviewed Adler's letters that are attached to the motion in the court files. The letters reveal no representation that Adler was in possession of the records. A letter signed by Adler, dated June 5, 2017, states in part: "You are well aware that I represented to you that our position is in response to the Judge's order, that have nothing to comply with. The Judge ordered that my client . . . turn over *his* cell records for the time period identified. I have stated to you repeatedly that my client does not have cell records, and you have heard both from me and from Verizon that the cell records are not in my client's name." (Emphasis in original.) In a letter dated May 18, 2017, to Barnes of the firm, Adler stated in part: "As I advised you, my client does not have possession or control of any records for the phone at issue. I also did not represent that I had them in my possession, but simply indicated what I believed they showed."

[11] On the basis of our review of the deposition transcript quoted by the court, we conclude that Adler did not state that he had possession of the records or that he himself would turn them over.

[12] In light of our discussion in part II of this opinion, we need not address § 16-247u (b) and (c) to resolve the present writ of error.

[13] Adler alleged that "the order directed that [Kolashuk's] time period was reasonable, while ignoring that the time period the court was referring to was contained in a subpoena of Verizon, not any subpoena directed at [Hatch]."

[14] Practice Book § 72-1 (a) provides in relevant part: "Writs of error for errors in matters of law only may be brought from a final judgment of the Superior Court to the Supreme Court in the following cases: (1) a decision binding on an aggrieved nonparty . . . ." See footnote 1 of this opinion.

[15] In his brief on appeal, Adler claimed that the trial court (1) abused its discretion by sanctioning him for failing to comply with a court order, (2) improperly sanctioned him for purportedly not following a vague, ambiguous, and fatally flawed order, (3) abused its discretion by finding that there was bad faith or misconduct on his part, (4) erred by finding that he had a duty to engage in efforts to procure discovery from third parties he did not represent, (5) erred in awarding attorney's fees against him, and (6) erred in awarding attorney's fees for activities beyond the drafting of the motion for sanctions itself. Following the submission of the parties' supplemental briefs, Adler refined the issues.

[16] "[T]he requirements set by our Supreme Court in *Millbrook Owners Assn.*, *Inc.* v. *Hamilton Standard*, [supra, 257 Conn. 17–18], of reasonable clarity, a trial court finding based on the record of actual violation and that the sanction imposed was proportional to the violation . . . ." *Bank of New York* v. *Bell*, supra, 142 Conn. App. 127.

[17] Practice Book § 13-6 is titled "Interrogatories; In General."

[18] Practice Book § 13-9 (a) provides in relevant part: "In any civil action . . . any party may serve . . . upon *any other party* a request to afford the party submitting the request the opportunity to inspect, copy, photograph . . . designated documents or to inspect . . . any tangible things in the possession, custody or control *of the party* upon whom the request is served . . . ." (Emphasis added.)